UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| **NICOLAUS RICARD-TESSIER, JOELLE RICARD-TESSIER, DENISE VASSILATOS** and **ADRIANNE WARD**, and all similarly situated individuals, known and unknown<br><br>        Plaintiffs,<br>v.<br><br>**CONDUENT COMMERCIAL SOLUTIONS, LLC**, a Texas corporation,<br><br>        Defendant. | Case No.:<br><br>Hon. |

## COLLECTIVE AND CLASS ACTION COMPLAINT WITH JURY DEMAND

Plaintiffs Nicolaus Ricard-Tessier ("Plaintiff Nicolaus Ricard-Tessier"), Joelle Ricard-Tessier ("Plaintiff Joelle Ricard-Tessier"), Denise Vassilatos ("Plaintiff Vassilatos"), Adrianne Ward ("Plaintiff Ward"), (collectively referred to as "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, hereby bring this Collective and Class Action Complaint against Defendant, Conduent Commercial Solutions, LLC. (hereinafter referred to as "Conduent" or "Defendant"), and state as follows:

## **INTRODUCTION**

1.     This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiffs, individually, and on behalf of all similarly situated persons, known and unknown, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., ., state contract laws, common law claims of unjust enrichment, as well as the following state wage and hour laws (collectively referred to herein as the "State Wage Acts"):

    a) New Jersey Wage And Hour Laws, N.J.S.A. 34:11-56a, *et seq.* and New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1, *et seq.*; and

    b) The North Carolina Wage and Hour Act, N.C.G.S. §§ 95-25.1, *et seq.* (specifically, the "pay day" statutes N.C.G.S. § 95-25.6 and N.C.G.S § 95-25.8).

2.     Defendant employed Plaintiffs as hourly at-home call center employees, called "Remote Associates."  Remote Associates were responsible for providing customer service to Defendant's clientele.

3.     The U.S. Department of Labor recognizes that call center jobs, like those held by Defendant's Remote Associates, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses that are prevalent in the industry. (**Exhibit A**).

4.     One of those abuses, which is at issue in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the

workday to the end of the last principal activity of the workday." *Id*.

5.     More specifically, Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails."  Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id.*

6.     Defendant failed to pay Plaintiffs and all similarly situated employees for their pre-shift time spent booting up their computers, logging into required computer networks and software applications, and reviewing work-related e-mails and other information prior to the start of their shift.

7.     Defendant also failed to pay Plaintiffs and all similarly situated employees for their mid-shift time spent booting up their computers, logging into required computer networks and software applications during the day when they were logged out during meal periods and other breaks during their shift.

8.     Defendant also failed to pay Plaintiffs and all similarly situated employees for their post-shift time spent shutting down, logging out of required computer networks and software applications, and reviewing work-related e-mails and other information after the end of their shift.

9.    Finally, Defendant failed to compensate Plaintiffs and all similarly situated employees for mid-shift, off-the-clock work attributed to technical problems with the computers, networks, programs/applications, and/or phones.

## JURISDICTION AND VENUE

10.    This Court has subject-matter jurisdiction over Plaintiffs' FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq*.

11.    Additionally, this Court has jurisdiction over Plaintiffs' collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

12.    Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis.  Defendant's Remote Associates engage in interstate commerce and, therefore, they are also covered by the FLSA on an individual basis.

13.    This Court has jurisdiction over Plaintiffs' state law claims pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).  The aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and this is a case in which more than two-thirds of the proposed Class members are citizens

of different states.

14.     A private party may also bring an action for damages for breach of contract under the common law.  Plaintiffs' breach of contract claims originate from the same facts that form the basis of their federal claims.  Thus, the Court has supplemental jurisdiction over Plaintiffs' breach of contract claims pursuant to 28 U.S.C. §1367.

15.     Plaintiffs' state-law claims originate from the same facts that form the basis of their federal claims.  Thus, the Court also has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. §1367.

16.     This Court has personal jurisdiction over Defendant because it does business within the state of North Carolina.

17.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant employs Remote Associates in this district, conducts business in this district, and a substantial portion of the events that give rise to the Plaintiffs' claims occurred in this district.

## **PARTIES**

18.     Plaintiff Nicolas Ricard-Tessier is a resident of Charlotte, North Carolina, and has been employed by Defendant as an hourly Remote Associate from approximately March 2019 to the present.  Mr. Ricard Tessier signed a consent form to join this lawsuit, which is located at **Exhibit B**.

19.    Plaintiff Joelle Ricard-Tessier is a resident of Charlotte, North Carolina, and has been employed by Defendant as an hourly Remote Associate from approximately March 2019 to the present. Ms. Ricard Tessier signed a consent form to join this lawsuit, which is located at **Exhibit C**.

20.    Plaintiff Denise Vassilatos is a resident of New Jersey and has been employed by Defendant as an hourly Remote Associate from approximately June 2017 to the present. Plaintiff Vassilatos signed a consent form to join this lawsuit, which is located at **Exhibit D**.

21.    Plaintiff Adrianne Ward is a resident of Tennessee and has been employed by Defendant as an hourly Remote Associate from approximately June 2017 to the present. Plaintiff Ward signed a consent form to join this lawsuit, which is located at **Exhibit E**.

22.    Defendant is a Texas corporation with its headquarters and principal offices located at 1702 N. Collins Blvd., Suite 280, Richardson, Texas 75080.

23.    Defendant is registered to do business in the State of North Carolina and its registered office in North Carolina is located at 2626 Glenwood Avenue, Suite 550, Raleigh, NC 27608.

24.    According to Defendant's website, "Conduent is the world's largest provider of diversified business process services for businesses and governments. Through people, process and technology, Conduent solutions and services automate

processes, improve efficiencies, reduce costs and enable revenue growth for most Fortune 100 companies and over 500 government entities." *See* https://www.conduent.com/business-process-services/#industries (last accessed May 4, 2020).

25.     Upon information and belief, Defendant employs thousands of Remote Associates across the country.

## GENERAL ALLEGATIONS

26.     Upon their hire, Remote Associates are typically paid at a rate of approximately $13.25 per hour.

27.     Remote Associates are employed on both a full-time basis (meaning more than 30 hours per week) and on some weeks worked over forty (40) hours in a single week, but in other weeks worked less than forty (40) hours and a part-time basis (meaning approximately twenty (20) hours per week).

28.     Prior to being hired, Remote Associates receive an offer from Defendant that sets forth the requirements of a Remote Associate, the job duties, and the offered rate of pay.

29.     Defendant also provides all Remote Associates with training on how to carry out their day to day job duties, including how to load and log into their computer programs at the beginning of the day, and how to log out at the end of the day.

30.     Plaintiffs accepted Defendant's offer to serve as Remote Associates with the understanding that their base wage rate would be $13.25 per hour.

31.     During their training, Remote Associates are taught, *inter alia*, how to open and use Defendant's computer networks and software programs/applications, how to track their time, the importance of attendance and schedule expectations, and Defendant's policies related to each topic.

32.     Once training is completed, Defendant requires the Remote Associates to follow daily computer login procedures, which consists of the following process in chronological order:

### Daily Log-in Procedures

1. Turn on the iMac and enter the password to access the Mac;
2. Launch and connect to the virtual private network (VPN);
3. Load Microsoft Office email;
4. Load FEPS timekeeping system;
5. Load NICE scheduling system;
6. Load AppleConnect and the related GBI system for tracking metrics;
7. Load iCloud support tool;
8. Load Monsterboard call volume tracking; and
9. Load CORE (an account management and service application that most of the Remote Associate's work is conducted in.

33.     Plaintiffs and other similarly situated Remote Associates are trained or instructed not to clock in until they complete all nine (9) steps above, so they can be prepared to take calls the moment they begin their shift.

34.     All of Defendant's Remote Associates use the same policy or similar

8

computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications are integral and an important part of the Remote Associates' work and they cannot perform their jobs without them.

35. In order to perform their job, Plaintiffs and all other Remote Associates are required to boot up and log in to various computer networks, software programs and applications, including those referenced above, in order to access information necessary to perform their job functions. This pre-shift process takes substantial time on a daily basis ranging from ten (10) minutes per day, and even longer on days where Defendant's computer networks and programs are not working properly.

36. However, Plaintiffs and all other Remote Associates are not actually "clocked in" for their shifts until after the computer boot-up and login process is complete, meaning that Plaintiffs and all other Remote Associates work at least ten (10) minutes each shift for which they are never compensated.

37. The pre-shift off-the-clock time Plaintiffs and all other Remote Associates spend booting up and logging in to their computers directly benefits Defendant.

38. The pre-shift boot-up and login process is an integral and indispensable part of the Remote Associates' job responsibilities.

39. Additionally, at the end of the day, Plaintiffs and all other Remote

Associates are required to logout of the time keeping system before shutting down their computers, which results in additional unpaid off-the-clock work.

40. The post-shift work performed after disconnecting from Defendant's network and logging out of the timekeeping system takes between one (1) to two (2) minutes at the end of each shift.

41. The post-shift off-the clock time Plaintiffs and all other Remote Associates spend logging out shutting down directly benefitted Defendant.

42. The post-shift logout and shutdown process was an integral and indispensable part of the Remote Associates' job responsibilities.

43. Despite knowing Plaintiffs and all other Remote Associates performed work before and after their scheduled shifts, Defendant and its managers failed to make any effort to stop or disallow this pre-, mid, and post-shift work and instead suffered and permitted it to happen.

44. Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiffs and all other Remote Associates booted up and logged into their computers and logged out and shutdown each day, along with the time they logged into their telephone systems.

45. Defendant possesses, controls, and/or has access to information and electronic data indicating when Plaintiffs and all other Remote Associates experienced down time due to technical issues.

46.    Despite its ability to track the amount of time Plaintiffs and other Remote Associates spend in connection with the pre-shift boot-up and login process and post-shift shutdown and logout process, and technical downtime, Defendant failed to pay Plaintiffs and other Remote Associates for the off-the-clock work they performed each shift.

A. **Pre-Shift Off-the-Clock Work**

47.    Pursuant to Defendant's policies, training, and direction, Plaintiffs and all other Remote Associates are required to start up and log into various secure computer networks and software programs/applications in order to access information.

48.    The pre-shift start-up and login process takes substantial time on a daily basis with said time ranging from ten (10) minutes per day, or even longer when technical issues arise.  Before clocking in, Defendant's Remote Associates are required to undertake the process identified above in ¶ 32, *supra*.

49.    Defendant's Remote Associates complete this process before each shift; however, they are not actually "clocked in" for their shifts until *after* they start-up their computer, establish a connection to Defendant's VPN, open the essential programs/applications, enter their credentials (password and username), log into their phone system, and change their status to "available" to take calls.

50.    As a result, Plaintiffs and other Remote Associates spend between ten

(10) minutes or more at the beginning of each shift performing off-the-clock (uncompensated) work for Defendant.

51.    The unpaid off-the-clock work performed prior to each shift by Plaintiffs and other Remote Associates directly benefits Defendant and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as Remote Associates.

### B. Mid-Shift Off-the-Clock Work

52.    Additionally, Remote Associates must perform off-the-clock work throughout their shifts as well.

53.    When Remote Associates take meal breaks or are away from their computers for any extended period, the programs they use often automatically log them out.

54.    To access the programs, the Remote Associates are forced to log back in without being compensated for that time.

55.    This results in off-the-clock approximately five (5) or more minutes of off-the-clock work that occurs during the Remote Associates' workday.

### C. Post-Shift Off-the-Clock Work

56.    Pursuant to Defendant's policies, training, and direction, Plaintiffs and all other Remote Associates are required to shut down and logout of the computer programs and applications *after* they log-out of Defendant's timekeeping system.

The post-shift logout and shutdown process takes substantial time on a daily basis with said time ranging from one (1) to two (2) minutes or more per shift.

57.    Accordingly, Defendant fails to pay Plaintiffs and all other Remote Associates for between one (1) to two (2) minutes or more of off-the-clock work performed after each shift.

58.    The unpaid post-shift, off-the-clock, work performed by Plaintiffs and all other Remote Associates after each shift directly benefits Defendant and the tasks undertaken in connection with the post-shift off-the-clock work are integral and indispensable to the Remote Associates' job duties and responsibilities.

### D. <u>Exemplary Pay Periods to Illustrate Pre-, Mid-, and Post-Shift Damages</u>

59.    Examples of specific workweeks where Defendant failed to pay Plaintiff Nicolaus Ricard-Tessier all overtime due for hours worked in excess of 40 hours (as mandated by the FLSA) include the following:

**Plaintiff Nicolas Ricard- Tessier**
**Pay Period of July 27, 2019 to August 9, 2019**

- Plaintiff Ricard-Tessier worked 80.7969 hours and was paid at a rate of $13.25 per hour for 80.00 hours and at his overtime pay rate of $19.88 per hour for 0.7969 hours.

- With pre-shift time of 10 minutes, mid-shift time of 5 minutes, and post-shift time of 1-2 minutes per shift, Plaintiff Ricard-Tessier should have been paid an additional 80 minutes or more at his overtime rate of $19.88 for each week.

**Exhibit F**, Plaintiff Nicolaus Ricard-Tessier Pay Stubs.

60.     Examples of specific workweeks where Defendant failed to pay Plaintiff Nicolas Ricard-Tessier all wages due and owing on his regular payday (as mandated by the North Carolina Wage and Hour Act) or otherwise unlawfully withheld his wages (in violation of the North Carolina Wage and Hour Act) include the following:

**Plaintiff Nicolas Ricard- Tessier**
**Pay Period of June 29, 2019 to July 12, 2019**

- Plaintiff Ricard-Tessier worked 66.6362 hours and was paid at a rate of $13.25 per hour for all hours worked.

- With pre-shift time of 10 minutes, mid-shift time of 5 minutes, and post-shift time of 1-2 minutes per shift, Plaintiff Ricard-Tessier should have been paid an additional 80 minutes or more at his regular rate of $13.25 for each week.

**Exhibit F**, Plaintiff Nicolaus Ricard-Tessier Pay Stubs.

61.     Examples of specific workweeks where Defendant failed to pay Plaintiff Vassilatos wages for hours worked (as mandated by the New Jersey Wages Acts) include the following:

**Plaintiff Vassilatos**
**Pay Period of April 4, 2020 to April 24, 2020**

- Plaintiff Vassilatos worked 12.7556 hours and was paid at a rate of $13.50 per hour for those hours.

- With pre-shift time of 10 minutes, mid-shift time of 5 minutes, and post-shift time of 1-2 minutes per shift, Plaintiff Vassilatos should have been paid an additional 80 minutes or more at her regular wage rate of $13.50 for each week.

**Exhibit G**, Plaintiff Vassilatos Pay Stubs.

    E. <u>Technical Malfunction Spent Off-the-Clock (Tech-Time)</u>

62.    In addition to the off-the-clock time spent during the startup/login and shutdown/logout procedures outlined above, Plaintiffs and other Remote Associates frequently spent significant time waiting and assisting Defendant's technical support team (referred to by Defendant as the "Help Desk") in troubleshooting problems they encountered with the network and/or their computer systems and applications.

63.    When Plaintiffs and other Remote Associates encountered technical difficulties with their networks, programs, applications, and/or phones, they were required to change their status to "unavailable" and clock-out of Defendant's timekeeping system while they worked with the Help Desk to correct the technical problems. This often required Remote Associates to wait on hold for an appreciable amount of time.

64.    After the problem was corrected, Plaintiffs and other Remote Associates were required to complete a work ticket that documented the technical issue. This form was also prepared off the clock.

65.    This off-the-clock time directly benefitted Defendant, was compensable time, and is a substantial element of damages in this lawsuit.

66.    Upon information and belief, Defendant maintains records that will illustrate the time spent by Plaintiffs and other Remote Associates working with the

Help Desk to correct problems with their computers, networks, programs/applications, and/or phones.

**F. Defendant Benefitted from the Remote Associates' Off-the-Clock Work**

67. At all relevant times, Defendant required and directly benefitted from the off-the-clock work performed by Plaintiffs and all other Remote Associates in connection with the pre-, mid-, and post-shift activities described above.

68. At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiffs and all other Remote Associates.

69. At all relevant times, Defendant was able to track the amount of time Plaintiffs and all other Remote Associates spent in connection with the pre-, mid-, and post-shift activities; however, Defendant failed to do so and failed to compensate Plaintiffs and all other Remote Associates for the off-the-clock work they performed.

70. At all relevant times, Plaintiffs and all other Remote Associates were non-exempt hourly employees, subject to the requirements of the FLSA and related state laws.

71. At all relevant times, Defendant used its attendance and adherence policies against Plaintiffs and the Remote Associates in order to pressure them into performing pre-, mid-, and post-shift work, off-the-clock.

72. Defendant expressly trained and instructed Plaintiffs and all other

Remote Associates to perform these off-the-clock work activities when they were not clocked into Defendant's timekeeping system.

73.     Defendant instructed Remote Associates to have all work applications and systems fully loaded before they clocked-in, so that they were prepared to take calls the moment they clocked-in at the start of their shift.  Similarly, at the end of the shift, Defendant instructed Remote Associates to clock-out before closing all work applications and systems to make certain they were clocked-out at the moment they stopped taking calls.

74.     At all relevant times, Defendant's policies and practices deprived Plaintiffs and the Remote Associates of wages owed for the pre-, mid-, and post-shift activities they performed.

75.     During the weeks that Remote Associates did not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices is a deprivation of straight time wages which is usually referred to as "gap time" claims. Gap time is compensable under many state laws, including in the states of North Carolina and New Jersey.

76.     During the weeks that Remote Associates worked over forty (40) hours in a workweek, the outcome of Defendant's policies and practices is a deprivation of overtime wages which are compensable under the FLSA.

77.     Defendant knew or should have known that the time spent by Plaintiffs

and other Remote Associates in connection with the pre-, mid- and post-shift activities is compensable under the law. Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

78.     Unpaid straight time wages (for Plaintiffs' gap time claims) related to the off-the-clock work described herein is owed to Plaintiffs at the rate which they are typically paid for hours worked up to forty (40) hours in a workweek.

79.     Unpaid wages related to the off-the-clock work described herein is owed to Plaintiffs at the FLSA mandated overtime premium of one and one-half the Plaintiffs' regular hourly rate because Plaintiffs worked in excess of forty (40) hours in a workweek.

80.     Unpaid wages related to the off-the-clock work described herein is also owed to Plaintiffs who worked in North Carolina and New Jersey at their regular hourly rate because Plaintiffs sometimes worked less than forty (40) hours in a workweek (as illustrated above) and their remedies under the FLSA are inadequate.

## **COLLECTIVE ACTION ALLEGATIONS**

81.     Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of themselves and on behalf of:

> *All current and former hourly remote associates who worked for Conduent at any time in the past three years.*

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to

amend this definition if necessary.

82.     Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and others similarly situated.

83.     Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

84.     Consistent with Defendant's policies and practice, Plaintiffs and the proposed FLSA Collective were not paid for all premium overtime compensation when they worked beyond forty (40) hours in a workweek.

85.     All of the work Plaintiffs and the proposed FLSA Collective performed was assigned by Defendant, and/or Defendant was aware of all of the work the Plaintiffs and the proposed FLSA Collective performed.

86.     As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the members of the FLSA Collective.  This policy and pattern or practice includes, but is not limited to:

   a.    Willfully failing to pay its employees, including Plaintiffs and the members of the FLSA Collective, for all premium overtime wages for hours that they worked off-the-clock in excess of forty (40) hours per workweek;

   b.    Willfully failing to pay its employees, including Plaintiffs and the members of the FLSA Collective, for other off-the-clock work; and

c. Willfully failing to record all of the time that its employees, including Plaintiffs and the members of the FLSA Collective, have worked for the benefit of Defendant.

87. Defendant is aware, or should have been aware, that federal law required it to pay Plaintiffs and the proposed FLSA Collective members an overtime premium for all hours worked in excess of forty (40) per workweek.

88. Defendant's unlawful conduct was widespread, repeated, and consistent.

89. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

90. The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues – the amount of uncompensated pre-shift startup/login time, mid-shift startup/login time, and the amount of post-shift logout/shutdown time owed to each employee – does not vary substantially among the proposed FLSA Collective members.

91.     There are many similarly situated current and former Remote Associates who were underpaid in violation of the FLSA.  They would benefit from the issuance of a court-authorized notice of this lawsuit and the opportunity to join.

92.     Plaintiffs estimate the FLSA Collective, including both current and former Remote Associates over the relevant period, includes hundreds, if not thousands of members.  The precise number should be readily available from a review of Defendant's personnel and payroll records.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

93.     Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of themselves and on behalf of:

> *All current and former hourly remote associates who worked for Conduent at any time during the applicable period.*

(hereinafter referred to as the "Rule 23 Nationwide Class").  Plaintiffs reserve the right to amend this definition if necessary.

94.     The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiffs reasonably estimate there are hundreds, if not thousands, of Rule 23 Nationwide Class members.  Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

95.    There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class.  These common legal and factual questions, include, but are not limited to, the following:

        a.    Whether the pre-shift time Rule 23 Nationwide Class members spend on startup and login activities each session is compensable time;

        b.    Whether the mid-shift time Rule 23 Nationwide Class members spend on startup and login activities each session is compensable time;

        c.    Whether the post-shift time Rule 23 Nationwide Class members spend on shutdown and logout activities is compensable time;

        d.    Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract; and

        e.    Whether Defendant's non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant.

96.    Plaintiffs' claims are typical of those of the Rule 23 Nationwide Class in that they and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiffs' claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and their legal theories are based on the same legal theories as all other Rule 23

Nationwide Class members.

97.     Plaintiffs will fully and adequately protect the interests of the Rule 23 Nationwide Class and she retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

98.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

99.     This case will be manageable as a Rule 23 Class action.  Plaintiffs and their counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

100.   Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.  *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

101.   Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## **RULE 23 STATE LAW CLASSES ALLEGATIONS**

94.   Plaintiffs bring this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on behalf of the following putative Classes (hereinafter collectively referred to as the "Rule 23 State Law Classes"):

**The New Jersey Class is defined as follows:**

> *All current and former Remote Associates who worked for Defendants at any location in New Jersey during the applicable statutory period.*

**The North Carolina Class is defined as follows:**

> *All current and former Remote Associates who worked for Defendants at any location in North Carolina during the applicable statutory period.*

Plaintiffs reserve the right to amend these definitions as necessary.

102.   The members of the Rule 23 State Law Classes are so numerous that joinder of all Rule 23 State Law Classes members in this case would be impractical. Plaintiffs reasonably estimate there are hundreds, if not thousands, of Rule 23 State Law Classes members.  Rule 23 State Law Classes members should be easy to identify from Defendant's computer systems and electronic payroll and personnel

records.

103.    There is a well-defined community of interests among Rule 23 State Law Classes members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 State Law Classes.  These common legal and factual questions, include, but are not limited to, the following:

     a.    Whether the pre-shift time Rule 23 State Law Classes members spend on startup and login activities each session is compensable time;

     b.    Whether the mid-shift time Rule 23 State Law Classes members spend on startup and login activities each session is compensable time;

     c.    Whether the post-shift time Rule 23 State Law Classes members spend on shutdown and logout activities is compensable time;

     d.    Whether Defendant's non-payment of wages for all compensable time amounted to a failure to pay all wages owed; and

     e.    Whether Defendant's non-payment of wages for all compensable time amounted to a failure to pay all wages at the time that they were owed.

104.    Plaintiffs' claims are typical of those of the Rule 23 State Law Classes in that they and all other Rule 23 State Law Classes members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiffs' claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 State Law Classes members' claims and

their legal theories are based on the same legal theories as all other Rule 23 State Law Classes members.

105.   Plaintiffs will fully and adequately protect the interests of the Rule 23 State Law Classes and they retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 State Law Classes.

106.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 State Law Classes members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

107.   This case will be manageable as a Rule 23 Class action.  Plaintiffs and their counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

108.   Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.  *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue

his claim as a class action").

109.   Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 State Law Classes and declaratory relief is appropriate in this case with respect to the Rule 23 State Law Classes as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I

## FLSA COLLECTIVE ACTION

## VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME

110.   Plaintiffs re-allege and incorporate all previous paragraphs herein.

111.   At all times relevant to this action, Defendant was subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

112.   At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

113.   At all times relevant to this action, Plaintiffs were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

114.   Plaintiffs and other FLSA Collective members, by virtue of their job duties and activities actually performed, are all non-exempt employees.

115.   Plaintiffs either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

27

116. At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

117. At all times relevant to this action, Defendant required Plaintiffs and all the proposed FLSA Collective members to perform ten (10) minutes or more of uncompensated pre-, mid-, and post-shift work, per shift, and Defendant failed to pay these employees the federally mandated overtime compensation for all work performed.

118. The off-the-clock work performed every shift by Plaintiffs and the proposed FLSA Collective is an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

119. In workweeks where Plaintiffs and other FLSA Collective members worked 40 hours or more, the uncompensated off-the-clock work time, and all other overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including shift differential where applicable. 29 U.S.C. § 207.

120. Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have determined how long it takes for its Remote Associates to perform their off-the-clock work. Further, Defendant could have easily accounted for and properly compensated Plaintiffs and the proposed FLSA

Collective members for these work activities, but did not.

121. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

## COUNT II

### RULE 23 NEW JERSEY CLASS ACTION

**VIOLATION OF NEW JERSEY WAGE AND HOUR LAWS, N.J.S.A. 34:11-56a, *et seq.*; FAILURE TO PAY OVERTIME WAGES; VIOLATION OF NEW JERSEY WAGE PAYMENT LAW, N.J.S.A. 34:11-4.1, *et seq.*; and FAILURE TO PAY STRAIGHT TIME WAGES ("NEW JERSEY WAGE ACTS")**

122. Plaintiffs re-alleges and incorporates all previous paragraphs herein.

123. At all times relevant to the action, Defendants were employers covered by the overtime and wage mandates of the New Jersey Wage Acts, and the Rule 23 Class are employees entitled to the protections of the New Jersey Wage Acts. N.J.S.A. 34:11-56a1(h) and N.J.S.A. 34:11-4.1b.

124. Defendants "suffered or permitted" the Plaintiff Vassilatos and other Rule 23 New Jersey Class members to work and thus "employed" them within the meaning of N.J.S.A. 34:11-56a1(f).

125. Under New Jersey law, employees are entitled to be paid for "all hours worked." N.J. Admin. Code tit. 12, § 56-5.1.

126. Defendants violated the New Jersey Wage Act by regularly and repeatedly failing to compensate the Rule 23 Class for the time spent on the work activities described in this Complaint.

127. Defendants' uniform policy and practice, as described above, was/is willful, intentional, unreasonable, arbitrary, and in bad faith.

128. As a result, the Rule 23 Class has and will continue to suffer loss of income and other damages. Accordingly, the Rule 23 Class is entitled to recover unpaid wages owed, including overtime wages, liquidated damages in the amount of 200% of the wages owed, plus costs and attorneys' fees, and other appropriate relief under the New Jersey Wage Acts at an amount to be proven at trial. *See* N.J. Stat. § 34:11-58.

## COUNT III

## RULE 23 NORTH CAROLINA CLASS ACTION

## VIOLATIONS OF NORTH CAROLINA WAGE AND HOUR ACT ("NCWHA"), N.C.G.S. §§ 95-25.1, *et seq.*- FAILURE TO PAY STRAIGHT TIME WAGES

129. Plaintiffs re-allege and incorporate all previous paragraphs herein.

130. At all times relevant to the action, Defendant is an employer covered by the mandates of the NCWHA, N.C.G.S. §§ 95-25.1, *et seq.*, and Plaintiff Nicolaus Ricard-Tessier, Plaintiff Joelle Ricard-Tessier, and the Rule 23 North Carolina Class are employees entitled to the NCWHA's protections.

131.    Pursuant to the NCWHA, N.C.G.S. § 95-25.6, it is unlawful for an employer to "suffer or permit" an employee to work without paying all owed, earned, and accrued promised wages, on the employee's regular payday.

132.    At all relevant times, Defendant, pursuant to its policies and practices, failed and refused to pay Plaintiff Nicolaus Ricard-Tessier, Plaintiff Joelle Ricard-Tessier and the North Carolina Class all owed, earned, and promised wages.

133.    Pursuant to NCWHA, N.C.G.S § 95-25.8, it is unlawful for an employer to withhold any portion of an employee's wages without the employee's advance written authorization, including the amount and reason for the deduction. If the amount is not available when the employee signs the authorization, the employee must receive advance written notice of the exact amount and of the right to withdraw the authorization.

134.    Consistent with the above, Defendant's wage withholding was in violation of N.C.G.S. § 95-25.6 and N.C.G.S § 95-25.8.

135.    Consequently, as a result of Defendant's unlawful policies and practices, Plaintiff Nicolaus Ricard-Tessier, Plaintiff Joelle Ricard-Tessier and the North Carolina Class have been deprived of compensation due and owing.

136.    Defendant's failure to pay Plaintiff Nicolaus Ricard-Tessier, Plaintiff Joelle Ricard-Tessier, and the North Carolina Class all owed, earned, and promised wages, despite the fact that, upon information and belief, Defendant knew of its

obligations under the law, entitles Plaintiff Nicolaus Ricard-Tessier, Plaintiff Joelle Ricard-Tessier, and the North Carolina Class to liquidated damages in an amount equal to the amount of unpaid wages, under N.C.G.S §§ 95-25.22 (a1).

137.   Defendant violated the NCWHA by regularly and repeatedly failing to compensate Plaintiff Nicolaus Ricard-Tessier, Plaintiff Joelle Ricard-Tessier, and the Rule 23 North Carolina Class for the time spent on the work activities described in this First Amended Complaint.

138.   As a result of Defendant's unlawful acts, Plaintiff Nicolaus Ricard-Tessier, Plaintiff Joelle Ricard-Tessier, and the North Carolina Class have been deprived of all compensation due under the law, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to N.C.G.S §§ 95-25.6, 95.25.22(a), (a1), and (d).

<u>**COUNT IV**</u>

<u>**RULE 23 NATIONWIDE CLASS ACTION**</u>

<u>**BREACH OF CONTRACT**</u>

139.   Plaintiffs re-allege and incorporate all previous paragraphs herein and further allege as follows.

140.   At all times relevant to this action, Defendant had a binding and valid contract with Plaintiffs and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular

hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Nationwide Class members performed on behalf of Defendant.

141.   For example, Defendant offered to compensate Plaintiffs at a minimum of $13.50 per hour, if they agreed to perform services for Defendant as a Remote Associate. Plaintiffs accepted Defendant's offer and performed their duties as Remote Associates in reliance on the offer.

142.   Defendant breached their contractual promises by failing to pay Remote Associates at their fixed, pre-agreed upon hourly rate for *all* of the hours worked.

143.   Defendant further breached their contractual promises by failing to pay Remote Associates at the agreed upon and expected overtime rates.

144.   Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiffs, was contractually entitled to a minimum hourly rate of approximately $12.00 to $14.000 per hour at varying times within the applicable period.

145.   Plaintiffs and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises contained in the offer letter and performed under the contract by doing their jobs and carrying out the work they performed each shift including the unpaid off-the-clock work that was required of them in connection with pre-shift, mid-shift, technical downtime, and post-shift work

activities, described herein.

146. By not paying Plaintiffs and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work described herein, Defendant systematically breached its contracts with Plaintiffs and each member of the Rule 23 Nationwide Class.

147. Defendant can easily ascertain the amount of damages owed to Plaintiffs and the Rule 23 Nationwide Class members based on the allegations made in this complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

148. Plaintiffs and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (*i.e.*, pure "gap time" claims).

149. Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiffs and other Rule 23 Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

150. As a direct and proximate result of Defendant's contractual breaches, Plaintiffs and every other member of the Rule 23 National Class were damaged in an

amount to be determined at trial.

151.   These claims are appropriate for class certification under Rule 23(b)(2) and (b)(3) because the law of contracts is substantially the same in North Carolina as it is in the other states from which the Rule 23 National Class members reside.

## COUNT V

## RULE 23 NATIONWIDE CLASS ACTION

## UNJUST ENRICHMENT

152.   Plaintiffs re-allege and incorporates all previous paragraphs herein.

153.   This Count is pled in the alternative to Count IV, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

154.   At all times relevant to this action, Defendant promised Plaintiffs and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

155.   Plaintiffs and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

156.   By not paying Plaintiffs and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

157. Plaintiffs and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

158. Defendant received and accepted the above-referenced off-the-clock work services from Plaintiffs and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

159. Upon information and belief, Defendant used the monies owed to Plaintiffs and every other Rule 23 Nationwide Class member to finance its various business ventures or pay its equity owners.

160. Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiffs and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiffs and the Rule 23 Nationwide Class for the same.

161. Plaintiffs and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiffs and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

162. As a direct and proximate result of Defendant's actions, Plaintiffs and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

WHEREFORE, Plaintiffs request the following relief:

a.     An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.     An Order certifying the New Jersey Class pursuant to Rule 23(b)(2) and (b)(3) with respect to the state statutory claims set forth above (Count II);

c.     An Order certifying the North Carolina Class pursuant to Rule 23(b)(2) and (b)(3) with respect to the state statutory claims set forth above (Count III);

d.     An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' breach of contract claim (Count IV);

e.     An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' unjust enrichment claim (Count V);

f.     An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all proposed FLSA Collective members, Rule 23 Nationwide Class members, and Rule 23 North Carolina Class members, and authorizing Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

g.     An Order designating the Plaintiffs as representatives of the FLSA Collective and the Rule 23 Nationwide Class, and undersigned counsel as Class counsel for the same;

h.     An Order designating Plaintiff Vassilatos as representative of the New Jersey Class and undersigned counsel as the Class counsel for the same;

i.     An Order designating Plaintiff Nicolaus Ricard-Tessier and

Plaintiff Joelle Ricard-Tessier as the representatives of the North Carolina Class and undersigned counsel as Class counsel for the same;

j.   An Order declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

k.   An Order declaring Defendant's violations of the FLSA were willful;

l.   An Order declaring Defendant breached its contracts with Plaintiffs and the members of the Rule 23 Nationwide Class by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

m.   An Order declaring Defendant was unjustly enriched by the off-the-clock work it required Plaintiffs and the members of the Rule 23 Nationwide Class to perform;

n.   An Order granting judgment in favor of Plaintiffs and against Defendant and awarding Plaintiffs, the FLSA Collective, the Rule 23 Nationwide Class, and the Rule 23 State Law Classes the full amount of damages and liquidated damages available by law;

o.   An Order awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

p.   An Order awarding pre- and post-judgment interest to Plaintiffs on these damages; and

q.   An Order awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiffs, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the

Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: May 26, 2020     Respectfully Submitted,

/s/James J. Mills
James J. Mills, NC Bar No. 36529
BURNS, DAY & PRESNELL, P.A.
2626 Glenwood Avenue, Suite 560
Raleigh, North Carolina 27608
Phone: (919) 782-1441
jmills@bdppa.com

*Local Counsel for Plaintiffs*

Kevin J. Stoops (*Pro Hac Vice* application forthcoming)
Charles R. Ash, IV (*Pro Hac Vice* application forthcoming)
Elaina S. Bailey (*Pro Hac Vice* application forthcoming)
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
248-355-0300
crash@sommerspc.com

*Trial Counsel for Plaintiffs*